IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Mathew D.,[1]

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

Civ. No. 3:22-cv-01480-MC

OPINION AND ORDER

MCSHANE, Judge:

    Plaintiff brings this action for judicial review of the Commissioner's decision denying his application for disability insurance benefits under the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). On July 31, 2021, Plaintiff filed an application for benefits, alleging disability beginning May 3, 2019. Tr. 64.[2] After a hearing, the Administrative Law Judge ("ALJ") determined that Plaintiff was not disabled under the Social Security Act. Tr. 28–29. Because the Commissioner's decision was based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.
[2] "Tr." refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

1 – OPINION AND ORDER

I.  **BACKGROUND**

The Social Security Administration utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4); 416.920. The initial burden of proof rests upon the claimant at steps one through four. If the claimant satisfies their burden with respect to the first four steps, the burden then shifts to the Commissioner for step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. § 404.1520(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is disabled. *Id.*; 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. § 404.1520(a)(4)(v); *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001).

Plaintiff claims that he is unable to work because he suffers from depression, anxiety, and post-traumatic stress disorder ("PTSD"). Tr. 23–24. Plaintiff testified that he was one of the first Marines to serve in Afghanistan after the September 11 terror attacks, was involved in multiple firefights, and received an honorable discharge. Tr. 38–41. Plaintiff also testified that his symptoms have worsened since he was terminated from his last job and that he feels as though he has lost control over his PTSD. Tr. 42. Plaintiff stated that he cannot function very well. *Id.* On a routine day, he makes his bed, drives his kids to school, and then "fall[s] into a slump." *Id.* He then lays in bed for hours at a time. *Id.* He makes a sandwich for lunch and sometimes helps his wife make dinner. Tr. 44. Plaintiff takes care of his dog, goes grocery shopping with his children once a week, mows the lawn, and washes the dishes once every couple of weeks. Tr. 44–49. On Halloween and at Easter, Plaintiff stated that he takes his kids to church functions. Tr.

45. Plaintiff also testified that he fishes "as much as I can get myself to do it" and hunts approximately twenty-five days per year.[3] Tr. 46–47.

After a hearing, the ALJ determined that Plaintiff suffers from the following severe impairments: PTSD and major depressive disorder. Tr. 20. The ALJ also determined that Plaintiff suffers from the following non-severe impairments: mild degenerative disc disease; hypertension; acid reflux disease; and obesity. Tr. 20–21. The ALJ found that Plaintiff:

> has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: He has sufficient concentration, persistence, and pace to complete simple, routine tasks for a normal workday and workweek with normal breaks; and should have no more than occasional structured interactions with coworkers and the general public.

Tr. 23.

Relying on the testimony of a vocational expert, the ALJ then concluded that Plaintiff was unable to perform any past relevant work. Tr. 27. At step five, the ALJ found that Plaintiff was capable of employment in the national economy as a laundry worker, warehouse worker, or packager. Tr. 28. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. Tr. 28–29. The Appeals Council declined to grant review of the ALJ's decision and Plaintiff timely appealed. Tr. 1–3; Pl.'s Compl. ¶ 2–4, ECF No. 1.

## II.   STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if it is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

---

[3] Plaintiff testified, "half my hunting is really just helping other people . . . find deer." Tr. 46. In addition to helping others hunt approximately 15 times each September, Plaintiff also hunts with his family for five days, helps people hunt for five days during late season cow hunts, and takes one or two youth hunters elk hunting for three days in late December. Tr. 46–47.

"Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the Court reviews the administrative record as-a-whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

## III.  DISCUSSION

Plaintiff argues the ALJ erred by: (1) improperly rejecting his subjective symptom testimony; (2) improperly rejecting lay witness testimony; (3) giving little weight to key aspects of the medical opinion evidence; and (4) posing an invalid vocational hypothetical at steps four and five of the Social Security Administration's sequential evaluation process. Pl.'s Brief 4–12, ECF No. 18; Pl.'s Reply Brief 2–9, ECF No. 21. The Court addresses each argument in turn.

### A.  Plaintiff's Subjective Symptom Testimony

The Ninth Circuit has established a two-step process to determine whether an ALJ may reject a claimant's subjective symptom testimony:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom . . . .

>If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.

*Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014) (citations and internal quotation marks omitted). In evaluating the credibility of a claimant's subjective testimony, the ALJ "must rely either on reasons unrelated to the subjective testimony (e.g., reputation for dishonesty), on conflicts between her testimony and her own conduct, or on internal contradictions in that testimony." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

Here, the ALJ made no affirmative finding of malingering. Thus, clear and convincing evidence was required to reject Plaintiff's subjective symptom testimony. In finding Plaintiff less-than fully credible regarding the extent of his limitations, the ALJ first reasoned that Plaintiff's ability to perform a wide variety of daily activities contradicted his testimony. Tr. 25; *see* 20 C.F.R. § 404.1529(c)(3)(i); *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (holding that an ALJ may discredit testimony based on daily activities "to the extent that they contradict claims of a totally debilitating impairment"). The ALJ specifically noted that Plaintiff drives his children to school five times per week, pays the bills, grocery shops, takes care of the dog, makes dinner several times per week, and mows a large lawn for up to six hours at a time. Tr. 24–25; 47–48; 185–188. The ALJ further observed that Plaintiff takes his children to Halloween and Easter activities, tried to start an online business, and goes fishing during the summer "as much as [he] can get [himself] to do it anymore." Tr. 44–48. Finally, the ALJ noted that Plaintiff hunts during deer and elk season approximately twenty-five times per year, often with others including children. Tr. 46–47. The ALJ determined that "[t]hese activities are inconsistent with the severity of his alleged limitations caused by his mental diagnoses. They

5 – OPINION AND ORDER

demonstrate that, at the very least, he can perform simple routine tasks and is capable of interacting appropriately with other people." Tr. 25. The Court agrees.

The ALJ also relied on the objective medical evidence to reject Plaintiff's subjective symptom testimony. *See* 20 C.F.R § 404.1529(c)(2); *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."). The ALJ summarized Plaintiff's medical record in the following manner:

> Treatment notes contain only intermittent complaints of mental symptoms; there are few objective findings indicative of significant functional restrictions. . . .
>
> Although the record notes that the claimant reported general suicidal thoughts on a couple of occasions, the overall record shows he has denied suicidal ideation on several occasions. He also denied ever being psychiatrically hospitalized. Mental status examinations of the claimant found he was calm and cooperative, his speech was normal, his mood and affect were appropriate, his attention and memory were intact, and his thought process and content were well organized.

Tr. 24–25 (internal citations omitted).

The ALJ specifically pointed to notes from more than 10 treating appointments that support her finding that Plaintiff was cooperative, with intact memory and thought process. *See* tr. 361–62 ("[Plaintiff] denied suicidal ideation or intent on the day of this exam."); tr. 366 ("[Plaintiff's] affect was within normal limits and mood was neutral."); tr. 348 (October 2021 emergency room note—for chest pain—stating "The patient is a very pleasant 41-year-old male"); tr. 366 (note stating Plaintiff "spoke freely during the exam. He was correctly oriented to person, place, time, and purpose. Thoughts were logical and goal directed. . . . His affect was within normal limits and mood was neutral. Attention and memory were intact."); tr. 884 ("Psych: bright affect, not apparently anxious or depressed, judgment and insight appropriate in context of visit"); tr. 380–81, 388, 873, 950, 968–69, 980, 990 (Plaintiff was "alert and oriented"

6 – OPINION AND ORDER

and appeared "Calm, appropriate, mood euthymic."). As the main dispute at issue is whether Plaintiff is able to appropriately interact with supervisors and the public, these treatment notes support the ALJ's findings.[4]

Also important to the ALJ's credibility determination was a series of treatment notes indicating that Plaintiff appeared well-dressed and clean-shaven at doctor's appointments, which contradicted Plaintiff's subjective testimony that he does not regularly shave, shower, or brush his teeth. Tr. 66–67 (noting that plaintiff was adequately groomed and spoke freely during the exam); tr. 334 ("[Plaintiff] was dressed casually in a cap, sweatshirt, and shorts . . . . His grooming and hygiene were good."); tr. 380–81, 388, 873, 950, 968–69, 980, 990 (Plaintiff appeared "well groomed" at appointment); tr. 366 (Plaintiff "was casually dressed and adequately groomed").

In briefing, Plaintiff emphasizes that the ALJ may not reject a claimant's subjective symptom testimony based *solely* on absence of objective medical evidence fully corroborating the alleged symptoms. Pl.'s Brief 7–12. However, this is not what the ALJ did. As outlined above, the ALJ relied on the objective medical evidence *in combination with* the extent to which Plaintiff's daily activities were inconsistent with the severity of his alleged symptoms. In doing so, the ALJ did not err. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (affirming the ALJ's decision to discount subjective symptom testimony based on objective medical evidence and the claimant's daily living activities).

In summary, because the ALJ utilized "ordinary techniques of credibility evaluation" and provided specific, clear, and convincing reasons for finding Plaintiff less than fully credible regarding the extent of his limitations, the Court concludes that the ALJ did not err in giving

---

[4] In reviewing the record, the Court found no instances of any treatment note indicating Plaintiff acted inappropriately during any appointment.

7 – OPINION AND ORDER

little weight to Plaintiff's subjective symptom testimony.[5] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). Importantly, the ALJ did not find Plaintiff had no limitations. Instead, the ALJ acknowledged Plaintiff was limited—i.e., that Plaintiff "should have no more than occasional structured interactions with coworkers and the general public"— but merely concluded the record as-a-whole indicated that Plaintiff was not quite as limited as alleged; i.e., that Plaintiff could, "at the very least, [] perform simple routine tasks and is capable of interacting appropriately with other people." Tr. 25. Tr. 23. Although other interpretations of the record may be reasonable, this does not meet the standard required for overturning the ALJ's conclusions.[6] *See Gutierrez*, 740 F.3d at 523 ("If the evidence can reasonably support either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner.") (cleaned up)).

### B. Medical Opinion Evidence

Plaintiff also argues that the ALJ erred in finding unpersuasive specific aspects of the medical opinions of psychologists Dr. Mark Dillon, Ph.D., and Dr. Daniel Scharf, Ph.D. Pl.'s Brief 4–7; Pl.'s Reply Brief 2–4. The Court finds that the ALJ did not err in finding those opinions "generally persuasive" but finding unpersuasive (1) Dr. Dillon's opinion that Plaintiff

---

[5] As discussed below, the ALJ also pointed to the various medical opinions when formulating Plaintiff's RFC. Specifically, the ALJ noted multiple doctors opined Plaintiff "is capable of occasional structured interactions with coworkers and the general public." Tr. 25.

[6] Plaintiff's friend submitted a third-party function report that generally mirrored Plaintiff's own statements regarding the extent of his limitations. Tr. 175–82. Typically, an ALJ must provide "germane reasons" for rejecting lay testimony. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). However, the failure to provide a reason for discounting lay witness testimony is harmless where "the same evidence that the ALJ referred to in discrediting the claimant's claims also discredits the lay witness's claims." *Molina*, 674 F.3d at 1122 (cleaned up) (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). Here, the ALJ found the law witness testimony unpersuasive because: (1) it was not supported by the objective medical evidence; (2) it was inconsistent with Plaintiff's daily activities; and (3) because the friend "was not a medical professional able to assess claimant's ability to work." Tr. 22. Although the ALJ erred in rejecting the friend's testimony because he was not a medical professional, any error was harmless because the friend's statements mirrored Plaintiffs own and the ALJ provided clear and convincing reasons for not finding Plaintiff fully credible to the extent of his limitations. *Molina*, 674 F.3d at 1122.

required a "loosely supervised setting" and (2) Dr. Scharf's opinion that Plaintiff would require "periodic" breaks and have "periodic" difficulty with irritability on the job. *See* tr. 26.

The Social Security Administration's regulations require the ALJ to "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions" according to several enumerated factors. 20 C.F.R. §§ 404.1520c(a)–(b). The most important factors in evaluating an opinion's persuasiveness are its supportability and consistency. § 404.1520c(b)(2). With respect to supportability, the regulations state: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." § 404.1520c(c)(1). Regarding consistency, the regulations state: "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." § 404.1520c(c)(2). Under the new regulations, an ALJ's decision to discredit a medical opinion need only be supported by "substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).

Here, the ALJ's refusal to adopt one specific portion of Dr. Dillon's opinion was supported by substantial evidence in the record. As noted, although the ALJ found Dr. Dillon's opinion to be "generally persuasive," she rejected the specific opinion that Plaintiff could only work in a "loosely supervised setting." Tr. 26. The ALJ provided four reasons supporting this finding. Tr. 26. First, the ALJ concluded that Dr. Dillon's medical opinion was inconsistent with observations of Dr. Kessler, who noted that "the claimant's [Activities of Daily Living] functioning on a daily basis does not support severe limit[ations] . . . . He can man[a]ge finances,

do shopping, manage transportation, [he] does chores and can prepare meals for himself." Tr. 70. The ALJ found Dr. Kessler's opinion to be more consistent with the overall record, and therefore more persuasive than Dr. Dillon's opinion. Tr. 25. This includes Dr. Kessler's opinion that Plaintiff "is capable of occasional, structured interactions w/ coworkers and the general public." Tr. 70. The ALJ explained why she found Dr. Kessler's opinion more persuasive:

> I find [the opinions of Dr. Kessler, Psy.D. and Dr. Winfred Ju, Ph.D.] to be persuasive for several reasons. First their analysis of the medical record supports their opinions. For example, they noted that the claimant helps others when they go hunting, he takes care of his kids and pets, he cooks meals, cleans, drives a car, and shops in stores for groceries. Second, their opinions are consistent with the medical evidence of record. For instance, mental status examinations of the claimant found he was calm and cooperative, his speech was normal, his mood and affect were appropriate, his attention and memory were intact, and his thought process and content were well organized.

Tr. 25 (internal citations omitted).[7]

Second, the ALJ contrasted Dr. Dillon's "loosely supervised setting" limitation with Plaintiff's daily activities, which included hunting up to four times per week in the fall, often with Plaintiff helping others hunt. Tr. 26; 187. Third, despite inconsistencies in the record, Dr. Dillon's "loosely supervised setting" limitation was based on Plaintiff's unconfirmed statement that he was terminated due to a supervisory conflict. Tr. 38–39; 66; 332. On this issue, the ALJ noted the record indicated Plaintiff was "terminated from his job as a security officer because he exaggerated an incident in which he used excessive force." Tr. 24. Here again, the ALJ's finding is supported by substantial evidence in the record. First, Plaintiff answered "No" to the question: "Have you ever been fired or laid off from a job because of problems getting along with other people?" Tr. 188. Additionally, the record contains notes stating "Clmt reportedly let go for lying to police" and ""Clmt is noted to have been able to work for many years as a security guard for

---

[7] As outlined above, the ALJ provided specific citations to numerous treatment notes indicating Plaintiff presented as calm and cooperative, with normal affect, normal attention and memory, and an organized thought process.

10 – OPINION AND ORDER

SSA until 6/19 when he was reportedly terminated for exaggerating an incident in which he used excessive force." Tr. 75–76.

Finally, the ALJ determined Dr. Dillon's treatment notes were internally inconsistent, which made it difficult to draw any definitive conclusions regarding the severity of Plaintiff's mental health limitations. Tr. 26. For example, in response to a question asking whether Plaintiff's "statements about the intensity, persistence, and functionally limiting effects of the symptoms are substantiated by the objective medical evidence alone," Dr. Dillon responded in the negative. Tr. 78. Additionally, although Dr. Dillon based this limitation on Plaintiff's subjective reporting, Dr. Dillon specifically noted that Plaintiff's "statements and allegations are considered *partially* consistent." Tr. 78 (emphasis added).

The ALJ's decision to give little weight to a specific portion of Dr. Daniel Scharf's opinion was also supported by substantial evidence in the record. Dr. Scharf found that Plaintiff could: "reliably attend a job;" "engage in appropriate social interaction;" "understand and remember work instructions and is able to sustain attention needed for job task completion." Tr. 242. The ALJ found these opinions persuasive. Tr. 26 However, Dr. Scharf also opined that Plaintiff would likely experience irritability and require periodic breaks from work due to his PTSD. Tr. 242. The ALJ found these opinions only "somewhat persuasive" because they were inconsistent with Plaintiff's daily activities. Tr. 26. The ALJ noted Plaintiff was able to drive his kids to school, go to social gatherings at his church, mow the lawn for up to six hours at a time, fish for five hours at a time, and hunt up to twenty-five days per year. Tr. 22; 26; 44; 177. The ALJ also discounted Dr. Scharf's opinion regarding "periodic" breaks and/or difficulty with irritability on the job because those opinions contrasted with Dr. Scharf's own examination

11 – OPINION AND ORDER

notes. Tr. 26. This finding is supported by the record. Dr. Scharf's notes include his observations of Plaintiff's behavior during the exam:

> This is a 40 yo man who was casually dressed and adequately groomed. He spoke freely during the exam. He was correctly oriented to person, place, time, and purpose. Thoughts were logical and goal directed. There were no signs of major psychopathology such as hallucinations or delusions. His affect was within normal limits and mood was neutral. Attention and memory were intact.

Tr. 246 (emphasis omitted) The ALJ reasonably concluded that Dr. Scharf's clinical observations contrasted with his opinion that Plaintiff would need additional breaks and would periodically suffer from irritability on the job.[8] Tr. 26.

In summary, the ALJ's weighing of the medical opinions was supported by substantial evidence and free of error. Here again, although other interpretations of the record may be reasonable, this does not meet the standard required for overturning the ALJ's conclusions.[9] *See Gutierrez*, 740 F.3d at 523 ("If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner.") (citation omitted)).

/ / / /

/ / / /

/ / / /

/ / / /

---

[8] Dr. Scharf based his opinion largely on Plaintiff's self-reporting of his symptoms and limitations. As noted above, the ALJ provided clear and convincing reasons, supported by substantial evidence in the record, for finding Plaintiff not entirely credible as to the extent of his symptoms and limitations.

[9] Plaintiff's briefs are silent with respect to the opinions of DDS psychological consultants Dr. Kessler and Dr. Ju. As noted above, those doctors concluded Plaintiff "is capable of occasional structured interactions with coworkers and the general public." Tr. 25. As noted above, the ALJ provided specific and legitimate reasons for finding those opinions more persuasive than the somewhat more restrictive opinions of Dr. Dillon and Dr. Scharf. One of the duties of ALJs is to resolve any disputes amongst the opinions of numerous physicians. Here, the ALJ did not err in looking at the record as-a-whole when finding the opinions of two doctors slightly more persuasive than the relatively similar opinions of two other doctors.

## IV. CONCLUSION

The ALJ's decision is free of legal error and supported by substantial evidence. The Commissioner's final decision is therefore AFFIRMED.[10]

IT IS SO ORDERED.

DATED this 10th day of May, 2024.

/s/ Michael J. McShane
Michael McShane
United States District Judge

---

[10] Plaintiff's argument regarding the hypothetical presented to the VE "simply restates [his] argument that the ALJ's RFC finding did not account for all [his] limitations because the ALJ improperly discounted [his] testimony and the testimony of medical experts." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1176–77 (9th Cir. 2008). Because the ALJ did not err, Plaintiff's step five argument necessarily fails. *Id.*

13 – OPINION AND ORDER